■ In the Matter of the Claim of JANINE TILL, Appellant, v APEX REHABILITATION et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [40 NYS3d 661]—

Clark, J. Appeal from a decision of the Workers' Compensation Board, filed June 3, 2015, which ruled, among other things, that claimant sustained a permanent partial disability and a 15% loss of wage-earning capacity.

In 2012, while working as a nursing assistant, claimant sustained a compensable work-related injury to her back and left shoulder and was awarded benefits. In 2014, a Workers' Compensation Law Judge classified claimant as having sustained a permanent partial disability and a 40% loss of wage-earning capacity. Upon administrative review, the Workers' Compensation Board agreed that claimant had sustained a permanent partial disability, but found that claimant's loss of wage-earning capacity was 15%. Claimant appeals.

Claimant argues that, because Workers' Compensation Law § 15 (5-a) limited her wage-earning capacity as a nonworking claimant to no more than 75% of her "former full time actual earnings," the Board was statutorily prohibited from determining that she had less than a 25% loss of wage-earning capacity under Workers' Compensation Law § 15 (3) (w). She asserts that Workers' Compensation Law § 15 (3) (w) (xi) and (xii) are in conflict with Workers' Compensation Law § 15 (5-a) and that, to reconcile this perceived conflict, we should construe these provisions as applying only to claimants who are employed at the time of classification—i.e., those claimants who are not subject to the 75% restriction imposed by Workers' Compensation Law § 15 (5-a). For claimant to prevail on her argument, we must accept the proposition that a nonworking claimant's loss of wage-earning capacity must always be the inverse of his or her wage-earning capacity. Mindful of established principles of statutory construction, and upon our examination of the statutory language and applicable legislative intent, we conclude that it need not be.[1]

Under well-settled principles of statutory interpretation, a statute is to be viewed as a whole and "its various sections must be considered together and with reference to each other" (*People v Mobil Oil Corp.*, 48 NY2d 192, 199 [1979]; *see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 92, 97, 98). Where a potential conflict exists, all parts of the statute must be given meaning and effect and, if possible, must be "harmo-

---

1. Our holding in this regard should not be construed as prohibiting such a result, provided that the Board's finding is supported by substantial evidence (*see e.g. Matter of Rosales v Eugene J. Felice Landscaping*, 144 AD3d 1206, 1209 [2016] [decided herewith]).

nized to achieve the legislative purpose" (*Sanders v Winship*, 57 NY2d 391, 396 [1982]; *see Heard v Cuomo*, 80 NY2d 684, 689 [1993]; *Matter of Lumpkin v Department of Social Servs. of State of N.Y.*, 59 AD2d 485, 490 [1977], *affd* 45 NY2d 351 [1978], *appeal dismissed* 439 US 1040 [1978]).

As relevant here, in cases of permanent partial disability that are not amenable to schedule awards, "wage-earning capacity" is used to determine a claimant's weekly rate of compensation. Specifically, in such cases, a claimant's rate of compensation is two thirds of the difference between his or her average weekly wage and his or her wage-earning capacity (*see* Workers' Compensation Law § 15 [3] [w]). Where a claimant is unemployed, wage-earning capacity is fixed by the Board—subject to a 75% cap (*see* Workers' Compensation Law § 15 [5-a]). In contrast, "loss of wage-earning capacity," a term that was added in 2007 as part of a comprehensive reform of the Workers' Compensation Law (*see* L 2007, ch 6, § 4), is used at the time of classification to set the maximum number of weeks over which a claimant with a permanent partial disability is entitled to receive benefits (*see* Workers' Compensation Law § 15 [3] [w]).[2] For instance, where, as here, a claimant is found to have sustained a 15% loss of wage-earning capacity, he or she is entitled to receive benefits for 225 weeks (*see* Workers' Compensation Law § 15 [3] [w] [xii]).

The durational limits imposed by Workers' Compensation Law § 15 (3) (w) do not distinguish between claimants who are employed at the time of classification and those who are not. Additionally, the legislative history makes clear that "wage-earning capacity" and "loss of wage-earning capacity" are to be used for separate and distinct purposes (*see* Letter from Workers' Compensation Board, Mar. 9, 2007, Bill Jacket, L 2007, ch 6 at 38-39). Indeed, in establishing the durational limits in Workers' Compensation Law § 15 (3) (w), the Legislature declined to use the traditional rate-based definition of wage-earning capacity to determine the duration of benefits, instead opting to introduce the term "loss of wage-earning capacity." Simply stated, "[t]he determination of a claimant's loss of wage[-earning] capacity is designed to establish duration of benefits, a finding which is unrelated to the traditional purpose of [Workers' Compensation Law] § 15 (5-a), which is to calculate the weekly benefit rate" (*Employer: Longley Jones Mgt. Corp.*,

---

**2.** Unlike wage-earning capacity, which can fluctuate based on a claimant's employment status, loss of wage-earning capacity was intended to remain fixed (*see* Letter from Workers' Compensation Board, Mar. 9, 2007, Bill Jacket, L 2007, ch 6 at 38-39).

2012 WL 1893410, *3, 2012 NYWCLR [LRP] LEXIS 173, *9 [Case No. 6070 4882, May 21, 2012]).

Moreover, it would be unreasonable to read into Workers' Compensation Law § 15 (3) (w) a minimum loss of wage-earning capacity of 25% for nonworking claimants simply because the rate-based definition of wage-earning capacity for nonworking claimants imposes a 75% cap. Were we to do so, similarly situated claimants would be treated unequally solely on the basis of whether they were employed at the time of classification (see Employer: Longley Jones Mgt. Corp., 2012 WL 1893410, *3, 2012 NYWCLR [LRP] LEXIS 173, *9). While the Board has, on occasion, previously stated that a nonworking claimant's loss of wage-earning capacity is the inverse of his or her wage-earning capacity (see Employer: The Waldorf Astoria, 2014 WL 935921, *4, 2014 NYWCLR [LRP] LEXIS 27, *11 [Case No. 0080 8695, Mar. 11, 2014]; Employer—Buffalo Auto Recovery SVD, 2009 WL 5177881, *6-9, 2009 NY Wrk Comp LEXIS 15501, *18, *21, *25, *27 [Case No. 8070 3905, Nov. 12, 2009]; but see Employer: FDNY, 2016 WL 4366774, *9-10, 2016 NY Wrk Comp LEXIS 7729, *24-27 [Case No. G0993 1570, Aug. 3, 2016]; Employer: Longley Jones Mgt. Corp., 2012 WL 1893410, *3, 2012 NYWCLR [LRP] LEXIS 173, *9), we note that, in matters of pure statutory interpretation, we need not defer to the Board's interpretation (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 285 [2009]; Matter of Canales v Pinnacle Foods Group LLC, 117 AD3d 1271, 1272 [2014]). Accordingly, as we discern no conflict between Workers' Compensation Law § 15 (3) (w) (xi) and (xii) and Workers' Compensation Law § 15 (5-a), we reject claimant's argument that the Board was prohibited from determining that she had less than a 25% loss of wage-earning capacity.

We further conclude that substantial evidence supports the Board's determination that claimant had a 15% loss of wage-earning capacity (see Matter of Roman v Manhattan & Bronx Surface Tr. Operating Auth., 139 AD3d 1304, 1306 [2016]; Matter of Wormley v Rochester City Sch. Dist., 126 AD3d 1257, 1258 [2015]). The Board properly considered the record evidence regarding claimant's functional abilities, the severity of her impairment and the physical limitations that prevented her from returning to work as a nursing assistant (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44, 47-49, 51, 120 [2012]), as well as her young age and her ongoing efforts to obtain her general equivalency diploma and medical assistant license (see Matter of Schirizzo v Citibank NA-Banking, 128

AD3d 1293, 1294 [2015]; *Matter of Wormley v Rochester City Sch. Dist.*, 126 AD3d 1257, 1258 [2015]; *Matter of Cameron v Crooked Lake House*, 106 AD3d 1416, 1416 [2013], *lv denied* 22 NY3d 852 [2013]). Claimant's remaining argument has been examined and found to be without merit.

Egan Jr., J.P., Lynch, Devine and Mulvey, JJ., concur. Ordered that the decision is affirmed, without costs.